

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| DARRELL CONNERS, | | 3:16-cv-00178-MMD-VPC |
| | Plaintiff, | |
| v. | | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| B. HOWARD, *et al.*, | | |
| | Defendants. | |

  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF No. 24). Plaintiff opposed (ECF No. 29), and defendants replied (ECF No. 31). For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF No. 24) be granted.

  **I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  Darrell Conners ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events that give rise to this action transpired at Ely State Prison ("ESP") in Ely, Nevada. (ECF No. 22 at 4.) Pursuant to 42 U.S.C. § 1983, plaintiff brings several civil rights claims against ESP Mailroom Supervisor Brea Finch née Howard ("Howard"), ESP Accounting Assistant Debbie Reed ("Reed"), ESP Sergeant Curtis Kerner ("Kerner"), and ESP Warden Renee Baker ("Baker"). (*Id.*; ECF No. 24.)

  Plaintiff's first amended complaint ("FAC") sets forth the following allegations. (ECF No. 22.) In Count I, plaintiff claims that Howard tampered with plaintiff's legal mail in violation of his right of access to the courts under the First and Fourteenth Amendment. (*Id.* at 5.) The tampering consisted of Howard's failure to mail time-sensitive documents relating to plaintiff's federal habeas case to the United States District Court. (*Id.*) Howard also refused to return plaintiff's habeas documents for a period of three months, and, later, withheld other legal mail

from plaintiff. (*Id.*) As a result, the United States District Court denied plaintiff's motion to proceed *in forma pauperis*, motion for appointment of counsel, and motion for certificate of appealability. (*Id.*)

In Count II, plaintiff brings a separate right of access to courts claim against Reed and Howard.[1] (*Id.* at 6.) Reed blocked plaintiff's attempt to pay the five-dollar filing fee for his habeas corpus application and stated that plaintiff's account was frozen. Howard, aware that plaintiff's check had not been issued, failed to inform plaintiff that his account was frozen and that his payment to the United States District Court could not be issued. Consequently, the court denied plaintiff's habeas action, which required plaintiff to engage in "several months of legal actions to correct." (*Id.*)

In Count III, plaintiff alleges that Kerner participated in a conspiracy to deny plaintiff his right of access to the courts. (*Id.* at 7.) Kerner denied plaintiff's grievance that ESP officials tampered with his legal mail without fully investigating the matter, and conspired with "the other named defendants to cover up their actions...." (*Id.*)

Although Baker is not named in the body of plaintiff's complaint, plaintiff argues that Baker is liable for the actions of Howard, Reed, and Kenner under a theory of supervisory liability. (*Id.* at 9.) Plaintiff seeks $80,000 in compensatory and punitive damages. (*Id.* at 8.) On July 18, 2017, defendants filed their motion to for summary judgment on the grounds that plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint. (ECF No. 24.) Plaintiff opposed (ECF No. 29), and defendants replied. (ECF No. 31.) This report and recommendation follows.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary

---

[1] Plaintiff presents this claim against Howard and Reed as a First and Fourteenth Amendment due process claim. (ECF No. 22 at 6; ECF No. 1-1 at 5.) However, the court screened plaintiff's original complaint and dismissed his due process claim with prejudice because a more specific cause of action existed on the facts alleged. (ECF No. 6 at 5-6.) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). The court will now construe plaintiff's Count II due process claim as a right of access to courts claim.

judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a

scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

**A.   Failure to Exhaust Administrative Remedies**

    **1.   Exhaustion under the PLRA**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

1  The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548
2  U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out,
3  enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th
4  Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an
5  agency's deadlines and other critical procedural rules because no adjudication system can
6  function effectively without imposing some orderly structure on the course of its proceedings."
7  *Woodford*, 548 U.S. at 90–91.

8  In the Ninth Circuit, a motion for summary judgment will typically be the appropriate
9  vehicle to determine whether an inmate has properly exhausted his or her administrative
10 remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed
11 in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to
12 summary judgment under Rule 56. If material facts are disputed, summary judgment should be
13 denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The
14 question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's
15 claim." *Id.* at 1170.

16 Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007).
17 The defendant bears the burden of proving that an available administrative remedy was
18 unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing,
19 the burden shifts to the inmate to "show there is something in his particular case that made the
20 existing and generally available administrative remedies effectively unavailable to him by
21 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate,
22 or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*,
23 747 F.3d at 1172).

24     **2.    NDOC's Inmate Grievance System**

25 Administrative Regulation ("AR") 740 governs the grievance process at NDOC
26 institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3)
27 Second Level. (*See* Def. Exh. B.) The inmate may file an informal grievance within six months
28

"if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 6.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.) NDOC staff is required to respond within forty-five days. (*Id.* at 8.) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." (*Id.*) The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 9.) Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*) Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a decision disposing of the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in district court.

An official grievance response that exceeds the timeframe does not result in an automatic finding for the inmate. (*Id.* at 5.) Rather, AR 740.038 requires the official to complete the response, even if it is overdue. (*Id.*) In turn, the inmate may await the response before appealing, with the applicable timeframe suspended until the inmate receives the overdue response. (*Id.*) Alternatively, the inmate may immediately appeal to the next grievance level without awaiting a response, though this option is not available at the second grievance level. (*Id.*)

3.     **Exhaustion of Plaintiff's Claims**

Defendants' sole argument for summary judgment is that plaintiff did not properly exhaust his available administrative remedies under the PLRA and AR 740. (*See* ECF No. 24 at 7-8.) Specifically, defendants contend that plaintiff filed his complaint in federal court before receiving a second level response to his grievance. (*Id.*; *see also* Def. Exh. A.) In support of their position, defendants provide a copy of plaintiff's grievance 2006-30-10901, which they

contend is the only grievance relating to plaintiff's claims. (Def. Exh. A.) Plaintiff does not dispute that grievance 2006-30-10901 is the relevant grievance, and admits that he filed "his complaint at the same time as he proceeded to the second level of the grievance procedure ...." (ECF No. 29 at 2.)

A prisoner's claims are not fully and properly exhausted until he receives "a decision on the merits at *each available step* of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (emphasis added); *see* Nev. Rev. Stat. § 41.0322 (2018) (prisoners must exhaust administrative remedies provided by AR 740 prior to bringing suit). Furthermore, a prisoner must fully exhaust his or her administrative remedies prior to tendering the complaint to the court, not during the pendency of the suit. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring dismissal without prejudice where a prisoner "d[oes] not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed").

There is no genuine dispute that plaintiff failed to fully exhaust his administrative remedies at the second level of the grievance procedure at ESP. Defendants' evidence demonstrates, and plaintiff concedes, that plaintiff filed his complaint in this action on the same day he submitted his second level appeal, well before a decision on the merits could issue. (Def. Exh. A.) Plaintiff eventually received a second level response during the pendency of this suit[2], but the damage was done; he deprived prison officials at the second level of the "time and opportunity to address complaints internally *before* allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (emphasis added). As such, the court finds that plaintiff failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative

---

[2] Plaintiff received a second level response to his grievance on August 29, 2016 — over five months after he filed his original complaint and nearly two months after he filed his FAC. (Def. Exh. A at 10.)

7

1  remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Plaintiff contends that he was unaware of the exhaustion requirement, but through no fault of his own. (ECF No. 29 at 1-3.) Rather, he argues that ESP "policies, practices, and customs fustrated [sic] and impeded plaintiff's ability to discover the very exhaustion requirement defendants now attempt to assert as a defense." (*Id.* at 2.) He provides sworn declarations from two fellow inmates that describe the manner in which ESP restricted inmate access to legal resources. (Plaintiff's Exh. B, C.) In response, defendants cite to *Ross v. Blake*, 136 S. Ct. 1850 (2016), for the proposition that the court may not excuse plaintiff's failure to exhaust his grievance through the second level, regardless of whether ESP restricted plaintiff's access to legal resources. (ECF No. 31 at 2.)

In *Ross*, the Supreme Court ruled that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S.Ct. at 1858-62 (the PLRA establishes a "mandatory exhaustion regime[], foreclosing judicial discretion"). The *Ross* court outlined three limited circumstances in which administrative remedies are deemed unavailable under the PLRA: (1) When the administrative procedure "operates as a simple dead end — with officers unable or unwilling to provide any relief to aggrieved inmates"; (2) When the administrative scheme is so opaque that it is "essentially unknowable" and "no ordinary prisoner can discern or navigate it"; and, (3) "[W]hen prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1858-61.

Plaintiff's argument that the manner of his confinement prevented him from discovering the exhaustion requirement does not fit any of the exceptions described in *Ross*. First, there is no evidence indicating that plaintiff encountered a dead end in the grievance process. To the contrary, he advanced upon "the possibility of some relief" by appealing the denial of his informal and first level grievance to second level grievance responders. *Id.* at 1860. Second, there was nothing so opaque in ESP's grievance procedure that prevented plaintiff from

exhausting his grievance through the second level. Any "ordinary prisoner" under the circumstances would conclude that the second level appeal, like the first, is not complete until an official response is received. *Id.*

The most charitable characterization of plaintiff's argument is that prison officials "thwarted" him from taking advantage of the grievance process by restricting his access to both the law library and legally trained persons. *Id.* at 1860-61; (*see* ECF No. 29 at 2). However, this defense stakes no claim against the availability of remedies at the second grievance level, and instead targets the adequacy of ESP's legal resources. The *Ross* court was clear that the mandatory language of the PLRA prevents a court from excusing a failure to exhaust in any case where the availability of administrative remedies is not in issue. 136 S.Ct. at 1857. Moreover, plaintiff admits that ESP's restrictions on legal resources were not particular to him, but were merely part of the terms of confinement at ESP. (ECF No. 29 at 1-2.) He also concedes to having access to the law library for eight months, (*Id.* at 1), and it appears that he could request delivery of case law and other legal resources to his cell throughout his incarceration at ESP, albeit on a limited basis. (Plaintiff's Exh. 2 at 2; Plaintiff's Exh. 3 at 2-3) (declaring that ESP inmates are provided with two legal request forms per week). These circumstances may not be ideal, but the court is unable to find that ESP officials engaged in the nefarious "machination, misrepresentation, or intimidation" contemplated by the *Ross* court. *Ross*, 136 S.Ct. at 1861 (citing cases where prison officials prevented inmates from exhausting administrative remedies through physical threats and deceit).

While it is clear plaintiff disagrees with the requirement to exhaust his administrative remedies in light of his limited access to legal resources, the court simply does not have the discretion to allow him to proceed. *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (PLRA requires a claim be dismissed without prejudice where it was filed prior to exhaustion of the prison grievance remedies, even where the prisoner has exhausted his remedies during the pendency of his action). Plaintiff does not dispute that he failed to exhaust his administrative remedies and he does not present any evidence that such remedies were effectively

"unavailable." Accordingly, the court concludes that plaintiff failed to exhaust available administrative remedies prior to filing this action, and recommends that defendants' motion for summary judgment should be granted. *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (prisoners would have "little incentive to comply with the system's procedural rules unless noncompliance carries a sanction").

## IV.   CONCLUSION

For the foregoing reasons, the court recommends that defendants' motion for summary judgment (ECF No. 24) be granted because plaintiff failed to exhaust his administrative remedies.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 24) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

DATED: January 31, 2018.

_____
UNITED STATES MAGISTRATE JUDGE